May it please the Court, Counsel, Mary Gaston, on behalf of Leslie Ruff, Heidi Parr, and Starbucks Corporation. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. Your Honors, this case is about vindicating the statutory rights of two individuals, Leslie Ruff and Heidi Parr, women who reached out and responded to law enforcement. This case is also about enforcing the laws of Washington and its public policy by immunizing citizens such as this who communicate with law enforcement, thereby encouraging citizens to work with and communicate with the police. The District Court here, Your Honors, erred in refusing to apply the Washington Immunity Statute, and it erred by refusing to award attorney fees. Let me ask you this. The first time that the District Court ruled on this issue, it said, it's unclear whether you need good faith, so I can't rule at this point. Now, at the point when the District Court made that decision, I know there was the decision in Bailey that you cite, but was it unclear? Was the District Court wrong in saying that he wasn't sure whether a good faith requirement was applicable? Yes, Your Honor. Even at the point in time where summary judgment was denied, there was no law interpreting the post-2002 immunity statute as requiring good faith. There was simply no authority whatsoever for the District Court to conclude that the law was unsettled. And as this Court is well aware, a court exercising supplemental jurisdiction is bound to apply the state law of the tort claims in front of it. It is not the District Court's – the District Court does not have the authority to decide how the law might change. Rather, it was the District Court's job to ascertain what the current state of the law was and to apply it. In 2002, the Washington State Legislature had made an explicit determination to remove the good faith requirement. The policy decision in the notes to that are clear that the purpose was to expand the scope of the protection in order to ensure that there was no – that there could be early dismissal, I believe the language was in the notes, that there was a way, because everyone knows if good faith is required, it becomes an intent issue and a factual issue that is very difficult to resolve early on. Regardless, Your Honor, whether the law was unclear at the time of the summary judgment, by the time the case went to trial and the Court had found that there was no evidence from which a jury could conclude that there was malice, at this point, the District Court, regardless of whether the interpretation could be that there was an implicit good faith requirement, the elements of the immunity statute under any interpretation had been met. Now, the revised statute says you still need to show good faith in order to get statutory damages. It says – to be more specific, Your Honor, it says that statutory damages that in the absence of bad faith, the District Court can award statutory damages. So how would the District Court's determination that there was no malice here, how would that – would that make your clients eligible, assuming that we agreed with your position, for those sorts of damages as well under case law interpreting the statute? That's correct, Your Honor. It wouldn't just make them eligible. It is a mandatory statutory damage award. And under Washington State law, Washington had previously interpreted a requirement to prove good faith for purposes of immunity to mean that the plaintiff actually had the burden of proving by clear and convincing evidence that the actor acted with actual malice. So in this case, under Washington law, the finding that there was no malice was tantamount to a finding that there was good faith by Ms. Ruff in communicating with law enforcement. Well, that doesn't – you know, bad faith may not necessarily mean malice. It may not rise to the level of malice. I think under Washington law, Your Honor, the cases recited, it does. The two are equivalent, particularly as they've been applied in the immunity in this statutory context. So I think regardless – and in any – Your Honor, there is no authority for the proposition that there is a requirement of good faith any longer. So the only way that good faith even becomes an issue is whether to award statutory damages. You're asking him to award statutory damages? That's correct. We're asking for fees, cost, and the statutory damages. It goes back. Would he still have to make a finding of good faith? Your Honor, again, under Washington law, I believe that the finding of no malice is the equivalent of a finding of good faith under Washington law. So you want us to – if we agree with you on the other part of your argument, you would want us to send it back and tell him to award statutory damages? That's correct, Your Honor. I would ask that the court reverse the trial court, find that the immunity statute applies, and award fees, cost, and the mandatory statutory damage award for each of the cases. Without making any further findings? I don't – I believe that the record is clear and that no further findings are necessary. I'm going to reserve the rest of my time. How about the 1983 claim for fees – 1988 claim for fees? Your Honor, the 1988 claim, we've limited to Ms. Parr's claim on the conspiracy claim. The original complaint did not include any allegation of – any allegation of a conspiracy between Ms. Ruff and law enforcement. Once counsel for the plaintiff learned or was told that the 1983 could not extend to private actors, he amended the complaint and then alleged a broad conspiracy bringing in all kinds of parties. Based on that and based on the fact that the investigation that had been done by plaintiffs and that had resulted in the criminal charges being dropped was completed before this action was finaled. All evidence – all evidence that existed on the issue of the videotape and the involvement or the lack of involvement of Ms. Parr was already available. There was no basis to bring a civil action for conspiracy against Ms. Parr or Ms. Ruff, and the plaintiff conceded that. And I would note, Your Honor, that the district court really gave the short shrift in denying the 1988 claim for damages. All the district court did was say, hey, I had to write a 10-page opinion, and therefore there must have been – it must not have been frivolous. And that is inappropriate, Your Honor. The case – Well, he just didn't write – he worked with the case for quite a while, correct? That is correct, Your Honor. There were pretrial motions. Correct. He was intimately familiar with the case. Absolutely. Went to trial. Absolutely. Saw the parties. Correct. Listened to the testimony. And then in his broad discretion, he determined that fees just weren't warranted under 1988. What's wrong with that? Your Honor, in this – He has discretion. There's no question that he has discretion. But in this case, if it is not an abuse of discretion, there will be never a case there is abuse of discretion. There was no evidence from day one that Ms. Parr had knowledge of Ms. Ruff, had knowledge of the events before they occurred, and nonetheless he alleged that she was involved in a conspiracy to have him arrested and that she destroyed evidence. Every bit of evidence that was available that indicated that Ms. Parr had no knowledge of the events that occurred until two days later and that there was never a videotape to be destroyed. The plaintiff had knowledge of that at the time he amended – that he filed his first complaint and amended the complaint. The court does have discretion, but this case was frivolous from day one, and the court should reverse on that issue as well. Okay. Thank you. Thank you. Thank you, Your Honor. May it please counsel, Richard Wall for Mr. DiBiase. First of all, I think realistically this is not about two individuals who are here seeking vindication. It's about Starbucks, a very large corporation wanting to set a precedent, I think. Don't sue us or you're going to pay. I can only imagine how much in the hundreds of thousands of dollars they will be asking Mr. DiBiase to pay or perhaps me. But I think the court initially got to the right issue here, which is it's the defendants here who are seeking relief and who are seeking relief in the district court from Judge Succo. They have the burden of establishing the right to that relief under the law and under the facts. They have never established that they have the right to relief that they are seeking under the law. They have claimed that there is an absolute unqualified immunity under the anti-SLAPP statute, but there is no Washington case, no Washington authority that says that. That issue has still not been addressed. Which part of the issue is it? Because the language seems applicable. It seems like a very low standard. They just had to show that they sought, they communicated to the police about a matter in interest. Is there something in there that you're saying is not established? Well, if you read the statute, the way it was and the way it was amended, they took out the good faith requirement, which was initially on the burden of the defendant coming forward and showing good faith in making the statements. But as it currently stands, what didn't they show? In terms of good faith? Well, the current statute, as I read it, says you just have to show you communicated to the police on a matter of interest. Right. And the legislative comment to the amendment says we're taking out this good faith requirement, we're taking this burden away from the defendant, and to put it in, make our law in line with a Supreme Court decision that places the burden on the plaintiff to show malice. And Judge Succo did apply that standard. He required Mr. DiBiase to come forward at summary judgment and show a question of fact on the issue of malice. And he ruled there was a question of fact on the issue of malice. And he denied their motion for summary judgment under the statute on that basis. He applied the law correctly. So you're saying it's still ambiguous as to whether there's a good faith requirement for other than statute for fees and costs? No. I'm saying that there's a difference between good faith and malice. Okay. So you're talking about the statutory damages?  I'm talking about whether or not you have immunity under the statute. If you read the statute as it is now, what it requires is it requires that the defendant come forward and show that they qualify under the statute otherwise. But if the plaintiff can establish malice, then the immunity does not apply. That's what Supreme Court decisions say. And the legislative comment to the amendment says specifically that we want to bring this in line with Supreme Court law. Okay. So that's what it changed. It switched the burden. Switched the burden from the defendant showing I did this in good faith to the plaintiff having to show it was done with malice. There really is nothing in the legislative. So it goes to trial and the judge at the end of the presentation of all the plaintiff's evidence, the judge said there's no malice here. Why doesn't the statute then apply? It doesn't because it's an immunity statute. So if you're immune, you don't go to trial. You can't even be sued. That's why the case law that has interpreted this statute previously has said this decision has to be made very early on in the litigation. Is there a Washington State appellate case by the Supreme Court or by the Court of Appeal that says that this statute only applies at the outset of the litigation? There are cases that say that the issue should be decided early on in the litigation. So there's no case that says it must be decided at the beginning of the litigation? No. Okay. So why couldn't it apply? In immunity under the Civil Rights litigation, 1983 litigation, sometimes, you know, ideally the court tells us you decide that issue right up front. Sometimes you can't. It has to go, you have to wait until certain factual matters are resolved before you can decide the question. So why does it have to be resolved right at the get-go? Well, this is a little bit of a confusing issue when it comes to immunity. I'll try to give you my explanation the best I can. Immunity means you're immune from suit. Oh, I know what immunity means. So you don't go to trial. So it has to be decided either at the pleading stage or at some very early summary judgment stage. It doesn't say that in the statute. It doesn't say that. And are you saying that you could not, after going to trial, decide, you know, I really should have granted immunity and could grant immunity at that point? No, you can't. You can't grant immunity at that point? No. But the need to show, as in the 1983 claim, the need to show that an officer acted unreasonably to get over the qualified immunity becomes a part of the claim. And if you are not able to succeed on that, then you lose at trial. But you don't go backwards and turn the clock back and say, oh, we should have ruled differently on summary judgment. In looking at this, you have to look at what was in front of Judge Succo at summary judgment. That's the only thing you can look at. As I understand it, counsel, immunity has more than one part. One, you like to protect people from having to go to trial. And so you rule early and grant the immunity. But the immunity is something which is important to the individual. And if you grant it at a later stage, it means that they were not, they should not have been tried. They're entitled to immunity because the case isn't one that would allow them to be found liable. Well, I have to respectfully disagree because, again, this concept of immunity means you can't be sued. So the case goes away. You never get to trial. That's one aspect of it. But that is really what the immunity is. You never get to the fact-finding stage. Once you've got to a fact-finding stage, you no longer are immune. You are actually litigating. You can't be immune anymore from the suit. So immunity always has to be determined prior to a fact-finding stage, which it was here. You can't decide at a later stage that you're not liable because you are immune? No, you can find that you're not liable, but you're not immune at that point from suit. You've already been sued and had to litigate. But the reason that you're not liable is because you're entitled to immunity. No, I would disagree with that. The reason that you're not liable is that if you have an immunity statute or an immunity law, like qualified immunity, that requires that you plead and prove additional facts that you wouldn't otherwise have to plead and prove if you're unable to do that, then you are not successful at trial. So there is a very big difference. Let me ask you this. Are all these findings that are necessary to prevail under this statute, this anti-SLAPP statute, are they findings for the judge or are they findings for a jury if the case is tried? Well, if you look at the Washington case law, it says very clearly the judge should decide this very early on. And really, if you look at this case, this is not what anti-SLAPP is about. This is a guy who was falsely accused of something and the publicity that he was subjected to and what he underwent was devastating to him. Now, ultimately, maybe we weren't able to prove our case, but I have to really disagree with Ms. Gaston that we knew all the facts when we filed this. If you look at what the judge had in front of him on summary judgment, the difference between what we were being told by the Starbucks employees and what we were being told by the police was irreconcilable, in my opinion. Can't reconcile them. Somebody was not telling us the truth. We were told there was no video, but then we were told by the police there was a video. We were told a video was destroyed, and then we're told, well, no, there never was a video. There was, in fact, a video, we found out eventually, that would have shown Mr. DiBiase at the drive-up window nothing going on. Which is what the initial allegation was, that this all happened at the window in front of the camera. Are you saying that there was a video? There was a video. Well, where is that in the evidence? Well, it wasn't available anymore because they allowed it to be erased. Again, this was, we were getting conflicting information from all kinds of sources. My understanding of the record as I looked at it was that they had a live feed so that they could look and see what was going on, but they didn't have video that was recording what was going on. That was where this incident supposedly took place, at the venue board. But remember, what the police reported they were told, and what the police reported in their press release, was that everything happened at the window in front of the camera and was recorded on video. And that's what the police told us they were told when they went out there to respond to this call. And that was the basis of our complaint here. We believed that either the police officer had made up a story for whatever purpose he had. We didn't know. Or that Ms. Ruff had basically lied to him about what she'd actually seen. That was the only way I think that she was. How about Ms. Parr? How did Ms. Parr get, why was she brought into all of this? Well, Ms. Parr was brought in because, again, we were getting conflicting information about this videotape. And at one point we believed, and I still don't know for sure what happened, but Ms. Parr at some point told us, well, I understood this all happened at the menu board, so we didn't preserve any of the other video. Maybe that's what happened, but it seemed totally unbelievable to me that when an incident like this takes place at a store like that, and they have video surveillance, the purpose of which is to preserve what happened, that she would have not preserved that evidence. And that evidence would have been absolutely exculpatory for Mr. DiBiase, and he was desperate to get that. And yet they let it, at least they claimed at first, they let it be erased. And so we obviously believed that there was possibly some conspiracy involved there to cover up that evidence. Now, only the police said that there was a video and that it was erased. Nobody else. Well, the police said that they were told that. So, again, who do we believe? Later we're told there is none, but the police said, no, we were told that when we went out there to investigate it. Somebody was not telling the truth here. We didn't know who for sure. We wanted that issue to go to the jury. Well, my understanding is that they're relying on 1988 to get attorney's fees on behalf of Ms. Parr. Is that right? I thought we had dismissed our claim against Ms. Parr early on. Well, they're still asking for attorney's fees under 1988 for the work done for her. But you have to show that this was frivolous. And it was not frivolous. We did not know what had happened. I mean, the newspaper, TV, their TV news is saying this was all captured on video. And it was seen by three women at the window. So, of course, I mean, what's the image you get in your mind? Getting a hold of that video of what happened at the window was extremely important to Mr. DiBiase. And when we tried to get it, we were told a couple different stories, but ultimately we were told, oh, we just didn't bother to save it. That, I think, raises a very serious issue whether or not there was some complicity here. You're over your time. Well, I'll give you a minute for rebuttal. No, you're not. You're the appellee. That's right. Can I ask you, I was searching through my file. I thought I had read some cases where the Washington courts did consider this immunity issue post-trial, but they didn't immediately pop out at me. Are there cases such as that, or are there no cases? Is it an open issue under Washington law? Post-trial or after the pleadings? There are cases deciding the issue on summary judgment. That would be the Bailey, the Burgess, and the Wright-Price case. There's another case, the Gilman v. McDonald case, where there was no trial, but the court had determined immunity under common law, and that was reversed on appeal, and the court found that because the elements of the immunity statute were present, the court should have awarded immunity under RCW 424.510 and awarded fees. I am not aware, as I stand here, about whether there's been a case after trial. Do you agree with opposing counsel that immunity only is to preserve your right not to go to trial? No, Your Honor, I don't, and there's no authority for that proposition as well. I'd like to say one other thing just about the Parr case. We're not only relying on 1988 for the fees for Ms. Parr. She was also entitled to immunity for responding to law enforcement's request for video. But she didn't make a complaint. No, she did not. Why does she qualify under the statute? Because under the Dang v. Earhardt case, the Washington court has made it very clear that it is not only the person who initiates the contact, but it's the events surrounding it. So in Ms. Parr's case, her involvement was to respond to a request from law enforcement for video, and that became the basis for the lawsuit. Under the Dang case, where almost identical circumstances, one person made the call, other bank employees then became involved, and the bank as well was sued along with the multiple of employees, the Washington State Court of Appeals addressed that issue specifically. So why does 1988 become important then for you? I mean, if you get attorney's fees under, if you're entitled to attorney's fees under the anti-slap statute, doesn't that cover everything? It would cover. It would cover for her because she got knocked out at summary judgment. Not in the immunity statute, though. She got knocked out on summary judgment on the state law and the conspiracy claim. It may be a point without a difference insofar as attorney fees are attorney fees, and what is collectible is an entirely different story. But nonetheless, the immunity statute is going to allow attorney fees, presumably for prevailing for that portion of the defense for which you prevailed under the state law claims. In contrast, 1988 allows fees for the work done on the case under the civil rights statute. Could I make one other point, Your Honor? Yes. I'm not going to belabor the point about people lying, because I think that the trial vindicated that issue. But I am going to respond to Mr. Wall's statement that they included Heidi Parr because they didn't know what had happened. That is not enough to bring a lawsuit under 1983. It is not enough not to know what happened. You are required to do your due diligence before you file suit. That didn't happen in this instance. Every piece of information available to the plaintiffs exonerated Ms. Parr completely from any of the initiation elements of this lawsuit. In other words, she was alleged to have conspired to have him arrested. They knew that that wasn't the case, and at best, they can say that they didn't know. But that's not enough. You didn't file a claim for fees under Rule 11. We didn't file a pleading, Your Honor. We did provide a letter to Mr. Wall. I have nothing else. Thank you. Thank you. The matter is submitted.
judges: Fletcher B. , Paez, Ikuta